**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| COLLINS ENGINEERS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19 C 1203 |
| ) | |
| TRAVELERS PROPERTY CASUALTY ) | Judge Rebecca R. Pallmeyer |
| COMPANY OF AMERICA ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On May 17, 2015, an embankment supporting tracks for the Chicago Transit Authority's ("CTA") Yellow Line collapsed in Skokie, Illinois, disrupting train service for several months. The portion of the embankment that collapsed is located on land owned by the Metropolitan Water Reclamation District of Greater Chicago ("MWRD"), which had engaged a number of parties to construct ultraviolet disinfection facilities at the site. Excavation work performed as a part of that project is alleged to have caused the embankment collapse. The CTA subsequently sued several parties involved in the project in the Circuit Court of Cook County, including Plaintiff/Counter-Defendant Collins Engineers, Inc., which was hired by Walsh Construction Company, the project's general contractor, to design and provide calculations for an earth retention system.

Collins notified its insurer, Defendant/Counter-Plaintiff Travelers Property Casualty Company of America, of the lawsuit and sought its defense to the suit. Travelers has declined to defend Collins, contending that the CTA's claims fall within an exclusion to the insurance policy. Collins filed this suit seeking declaratory judgment that Travelers has a duty to defend it under the insurance policy and also alleging breach of contract. Travelers's answer [25] asserts a number of affirmative defenses as well as counterclaims for declaratory judgment that it has no duty to defend Collins. The parties have filed cross-motions for partial summary judgment on the

duty to defend. For the following reasons, the court grants Collins's motion [14] and denies Travelers's motion [33].

## **BACKGROUND**

The parties' summary judgment submissions support the following facts:

Plaintiff/Counter-Defendant Collins Engineering is a corporation organized in Illinois with its principal place of business in Illinois as well. (Pl.'s Stat. of Mat. Facts (hereinafter "PSF") [16] ¶ 1.) Defendant/Counter-Plaintiff Travelers is organized in Connecticut and has its principal place of business there, too. (*Id.* ¶ 2.) Because the amount in controversy exceeds $75,000, the court has diversity jurisdiction over this suit pursuant to 28 U.S.C. § 1332. (*Id.* ¶¶ 3–4.)

**The Insurance Policy**

Travelers issued Commercial Insurance Policy No. P-630-7A377680-TIL-14 to Collins, and that policy was in effect from November 1, 2014 to November 1, 2015. (*Id.* ¶ 5.) The commercial general liability part of the policy limits liability to $1 million per occurrence and $2 million in aggregate. (Def.'s Stat. of Mat. Facts (hereinafter "DSF") [35] ¶ 6.) The insurance policy's commercial general liability coverage form contains the following provision:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Ex. B to Decl. of Cecchi [17-1] at 132.) "Property damage" is defined as "physical injury to tangible property, including the loss of use of that property" and "loss of use of tangible property that is not physically injured." (*Id.* at 151.) And "suit" means "a civil proceeding in which damages because of 'bodily injury', 'property damage', or 'personal and advertising injury' to which this insurance applies are alleged." (*Id.*)

The insurance policy also includes a professional services endorsement, which is critical to the parties' dispute before this court. This endorsement excludes from coverage any losses

2

for bodily injury or property damage "arising out of the rendering or failure to render any 'professional services.'" (*Id.* at 186.) "Professional services" is defined as follows:

> "Professional services" means any service requiring specialized skill in or training, including:
> 
> **a.** Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;
> 
> **b.** Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor or subcontractor; or
> 
> **c.** Monitoring, testing, or sampling service necessary to perform any of the services described in Paragraph **a.** or **b.** above.

(*Id.*)

**The Underlying Litigation**

In October 2013, Collins agreed to become a subcontractor for Walsh Construction, the general contractor for the MWRD ultraviolet water treatment facilities project. (DSF ¶ 11.) According to its contract with Walsh, Collins was hired to perform "professional design services" including "provid[ing] design calculations and drawings for the earth retention system." (*Id.* ¶ 12.) In July 2018, the CTA sued Collins, Walsh, and other subcontractors for collapse of an embankment supporting the Yellow Line on May 17, 2015. (PSF ¶ 19.) The parties to the suit reached a settlement in January 2020, resulting in the case's dismissal. (*See* Def.'s Resp. to Mar. 23 Order [55] ¶ 1.) In its complaint, the CTA alleged that the damaged portion of the Yellow Line was located on land owned by MWRD. (*Id.* ¶ 20.) The MWRD ultraviolet water treatment project required excavation for the installation of a new conduit and the construction of two large earth retention structures ("ERS"), according to the CTA. (*Id.* ¶¶ 22, 24.) During the course of construction, one of the earth retention structures was allegedly unable to withstand the soil pressures, which resulted in its collapse, damaging the Yellow Line and its supporting embankment. (*Id.* ¶ 25.)

3

In its amended complaint filed December 26, 2018 (*id.* ¶ 30), the CTA asserted two counts—a general negligence claim and a professional negligence claim—against Collins. (*Id.* ¶ 18.) With respect to the general negligence claim, the CTA asserts that Collins committed the following negligent conduct:

    a. Failing to perform work and services in connection with the construction project, including but not limited to all excavation activities, in a skillful, professional, prudent and workmanlike manner;

    b. Failing to construct the ERS and Open-Cut Excavations in a skillful, professional, workmanlike and prudent manner;

    c. Moving the excavation on the project from its original location to a location closer to CTA's tracks/embankment without changing excavation plans and load calculations to account for the extra load the embankment would place on the ERS;

    d. Failing to meet applicable safety standards and practices in the excavation and construction of the ERS and Open-Cut Excavations, specifically including, but not limited to failing to meet the appropriate factor of safety threshold acceptable to the industry for these activities;

    e. Failing to construct appropriate bracing necessary to support the ERS and Open-Cut Excavations;

    f. Permitting the Open-Cut Excavation to proceed despite an absence of appropriate supporting calculations for the location;

    g. Failing to take reasonable precautions while operating equipment or supervising same in order to prevent the embankment collapse and resulting damage;

    h. Failing to take all necessary and reasonable precautions so as to prevent any work performed by its employees, agents, contractors or subcontractors from causing damage to the embankment;

    i. Improperly hiring, retaining, selecting, training, instructing, and/or supervising employees, contractors/subcontractors with respect to performing safe and reasonable work;

    j. Failing to use due care and safety in performing its work;

    k. Failing to properly monitor the construction site, the ERS and surrounding areas impacted by the excavation;

    l. Failing to make adjustments in the construction site and excavation and/or otherwise take steps to prevent the Collapse despite having available data demonstrating such adjustments and steps were needed;

    m. Violating industry standards, federal, state and/or local ordinances, statutes, and/or codes; and

    n. Any other acts and/or omissions, which become known during the course of discovery.

4

(CTA Am. Compl., Ex. L to Dec. of Cecchi [17-1], ¶ 45.) As for the professional negligence claim, the CTA has identified similar conduct, though it dropped paragraph g above (failing to take reasonable caution to prevent the collapse) and changed some of the wording—apparently to cover professional, as opposed to manual, activities—which the court notes via underlining below:

a. Failing to perform <u>design</u> work and <u>engineering</u> services in connection with the construction project, including but not limited to all excavation activities, in a skillful, professional, prudent and workmanlike manner;

b. Failing to <u>design</u> the ERS and Open-Cut Excavations in a skillful, professional, workmanlike and prudent manner;

c. Moving the excavation on the project from its original location to a location closer to CTA's tracks/embankment without changing excavation plans and load calculations to account for the extra load the embankment would place on the ERS;

d. Failing to meet applicable safety standards and practices in the <u>design</u>, excavation and construction of the ERS and Open-Cut Excavations, specifically including, but not limited to failing to meet the appropriate factor of safety threshold acceptable to the industry for these activities;

e. Failing to <u>design, calculate and engineer the stability and</u> bracing necessary to support the ERS and Open-Cut Excavations;

f. Permitting the Open-Cut Excavation to proceed despite an absence of appropriate supporting calculations for the location;

g. Failing to take all necessary and reasonable precautions so as to prevent any <u>professional services</u> performed by its employees, agents, contractors or subcontractors from causing damage to the embankment;

h. Improperly hiring, retaining, selecting, training, instructing, and/or supervising employees, contractors/subcontractors with respect to performing <u>professional services</u>;

i. Failing to use due care and safety in performing its work;

j. Failing to properly monitor the construction site, the ERS and surrounding areas impacted by the excavation;

k. Failing to make adjustments in the construction site and excavation and/or otherwise take steps to prevent the Collapse despite having available data demonstrating such adjustments and steps were needed;

l. Violating industry standards, federal, state and/or local ordinances, statutes, and/or codes; and

m. Any other acts and/or omissions, which become known during the course of discovery.

(*Id.* ¶ 56.)

In October 2018, Walsh initiated a suit against its subcontractors, including Collins, in the Circuit Court of Cook County. (PSF ¶ 47.) The Walsh and CTA cases have been consolidated for discovery purposes. (*Id.* ¶ 55.) Walsh asserts three claims against Collins: First, identifying conduct similar to that described in the CTA's allegations, Walsh claims that the firm engaged in professional negligence. (Walsh Am. Compl., Ex. D Travelers's Counterclaim [25-4], ¶ 73.) Second, Walsh brings a negligent misrepresentation claim, alleging that Collins communicated inaccurate information regarding the excavation design drawings and geotechnical report. (*Id.* ¶¶ 76–79.) Third, Walsh alleges that Collins breached its contract with Walsh "by failing to properly design the earth retention systems to withstand the anticipated loads from the CTA tracks and embankment and to review the excavation design bids, which included ensuring that the proposed excavations were stable and in accordance with all applicable industry standards." (*Id.* ¶ 88.) This litigation is ongoing. (*See* Pl.'s Resp. to Mar. 23 Order [56] at 2 n.2.)

**Travelers's Denial of Coverage**

On July 23, 2018, Collins's insurance broker notified Travelers of the CTA complaint, stating that Collins was seeking defense and indemnity. (PSF ¶ 56.) Travelers responded on August 17, declining to defend Collins in the CTA action on the ground that the claims fell within the "professional services" exclusion of the insurance policy. (*Id.* ¶ 57.) Collins's counsel twice contacted Travelers—in September and November 2018—in an attempt to persuade Travelers to defend it in the CTA 's lawsuit. (Sept. 24, 2018 Letter to Def., Ex. F to Decl. of Cecchi [17-1]; Nov. 11, 2018 Letter to Def., Ex. J to Decl. of Cecchi [17-1].) But because Travelers stood by its position that it had no duty to defend the insured in the case, Collins initiated this suit in this court on February 15, 2019. (*See* Feb. 15, 2019 Letter to Def., Ex. M to Decl. of Cecchi [17-1].) Although Travelers has stated that Collins never formally requested a defense to the Walsh suit, the insurer does not dispute that it had notice of the suit and instead contends and has briefed the argument that, as with the CTA action, it does not have a duty to defend because of the policy's professional services exclusion. (*See* Def.'s Resp. to Mar. 23 Order [55] ¶¶ 2–3.)

**DISCUSSION**

Collins filed this lawsuit under the court's diversity jurisdiction, seeking a declaration that it is entitled to defense and indemnification under the Travelers policy. The parties agree that Illinois substantive law governs. Under Illinois law, "the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 818–19 (7th Cir. 2008) (citing *Crum & Forster Managers Corp v. Resolution Tr. Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1078 (Ill. 1993)). Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). On cross-motions for summary judgment, the court examines the record and draws "all reasonable inferences in the light most favorable to the party against whom the motion was filed." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019).

The central question for both parties' motions is whether Travelers has a duty to defend Collins or whether the insurer is relieved of that duty by the "professional services" exclusion. A court determining whether an insurer has a duty to defend its insured "must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy." *Valley Forge Ins. Co. v. Swiderski Elec., Inc.*, 223 Ill. 2d 352, 363, 860 N.E.2d 307, 314 (2006) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 107–08, 607 N.E.2d 1204, 1212 (1992)). When making this comparison, the court must "construe the allegations liberally in favor of the insured." *BASF*, 522 F.3d at 819. "If the facts alleged fall within, or potentially within, the policy's coverage," the insurer must defend the insured. *Valley Forge*, 223 Ill. 2d at 363, 860 N.E.2d at 314–15. An insurer "may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts" that would potentially bring the claim within the policy's coverage. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74, 578 N.E.2d 926, 930 (1991). "Where, as here, an insurer denies a duty to defend based on an exclusionary clause within a policy, 'its application must be clear

7

and free from doubt.'" *Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995) (quoting *Transamerica Ins. Co. v. South*, 975 F.2d 321, 327 (7th Cir. 1992)). "The burden of proving that a claim falls within an exclusion rests squarely on the insurer." *Id.*

In denying that it had a duty to defend, Travelers has pointed to the "professional services" exclusion. Numerous cases in federal and state courts in Illinois have considered similar exclusions. *See, e.g., Hartford Cas. Ins. Co. v. Juneau Assocs., Inc.*, No. 14 C 0826, 2015 WL 11439066, at *6 (S.D. Ill. Dec. 7, 2015); *Nat'l Fire Ins. Co. of Hartford v. Kilfoy*, 375 Ill. App. 3d 530, 536, 874 N.E.2d 196, 202 (1st Dist. 2007). In construing the meaning of "professional service," "courts have adopted an expansive definition of the term." *State St. Bank & Tr. v. INA Ins. Co.*, 207 Ill. App. 3d 961, 967, 567 N.E.2d 42, 47 (4th Dist. 1991).

> The term is not limited to services performed by persons who must be licensed by a governmental authority in order to practice their professions. Rather, it refers to any business activity conducted by the insured which involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or manual in nature.

*Id.* at 967, 567 N.E.2d at 47.

With this standard in mind, the court turns first to the allegations against Collins in the Walsh amended complaint. Walsh alleges that, in accordance with the two parties' contract, it retained Collins to "provide professional design services, information, guidance, geotechnical, analytical, and engineering services for Walsh in accordance with the Project specifications . . .; provide design calculations for the [ERS] . . .; [ ] review the bid designs . . . for the excavation work." (Walsh Am. Compl., Ex. D Travelers's Counterclaim [25-4], ¶ 14.) "In reviewing and analyzing the bid designs for the project, Collins was responsible for ensuring that the proposed excavations provided by Greeley and Hansen (and its subcontractors Rubinos and Ground Engineering) and the earth retention systems were stable." (*Id.* ¶ 15.) Walsh further alleges that "[t]he slope embankment failed because of deficiencies in the design of the open cut excavation . . . reviewed and replicated by Collins." (*Id.* ¶ 23.) Hence, as discussed above, Walsh asserts three claims against the insured. The first claim is for professional negligence based on Collins's

8

alleged failure to conform its conduct to professional standards of care, such as "[f]ailing to properly perform design and engineering services," "failing to properly represent the accuracy and safety" of aspects of the project, "[f]ailing to meet applicable safety standards and practices," "[f]ailing to properly review and interpret the CTA track and earth retention movements before the collapse," "[i]mproperly hiring, retaining, selecting, training, instructing, and/or supervising employees," and "[v]iolating industry standards, federal, state and/or local ordinances, statutes, and/or codes." (*Id.* ¶ 73.) The second claim is for negligent misrepresentation, which concerns Collins allegedly supplying Walsh with inaccurate information regarding the excavation. (*Id.* ¶¶ 76–79.) And the third claim is for breach of contract. Specifically, Walsh asserts that "Collins breached its contract with Walsh by failing to properly design the [ERS] to withstand the anticipated loads from the CTA tracks and embankment and to review the excavation design bids." (*Id.* ¶ 88.) Even construing these allegations liberally in favor of the insured, it is apparent that all concern conduct "involv[ing] specialized knowledge, labor, or skill, and is predominantly mental or intellectual . . . in nature." *State St. Bank*, 207 Ill. App. 3d at 967, 562 N.E.2d at 47. Therefore, Travelers has no duty to defend the insured in the Walsh litigation.

This conclusion is unaffected by the state court's decision to consolidate the Walsh and CTA cases for discovery purposes. Collins is correct that if the cases were consolidated for *all* purposes and the insurance company were found to have a duty to defend against the CTA complaint, Travelers could be obligated to provide a defense for the Walsh claims as well. *See Robert R. McCormick Found. v. Arthur J. Gallagher Risk Mgmt. Servs., Inc.*, 2016 IL App (2d) 150303, ¶ 9, 52 N.E.3d 649, 652 (2d Dist. 2016) (emphasis added) ("If the facts alleged in the underlying complaint fall within, or potentially within, the policy's zone of coverage, then the insurer is obligated to defend the ensured *for the entire action*."). But that is not the situation here where the consolidation is limited to discovery purposes.

Next, the court considers whether the facts alleged in the CTA's amended complaint fall within the professional services exclusion. As in the Walsh complaint, many of the CTA's

9

allegations plainly concern conduct that is predominantly mental or intellectual in nature: "[f]ailing to perform design work and engineering services . . . in a skillful, professional, prudent and workmanlike manner," "[f]ailing to design, calculate and engineer the stability and bracing necessary to support the ERS and Open-Cut excavations," "[i]mproperly hiring, retaining, selecting, training, instructing and/or supervising employees, contractors/subcontractors with respect to performing professional services," and "[f]ailing to make adjustments in the construction site and excavation and/or otherwise take steps to prevent the Collapse despite having avaialbe data demonstrating such adjustments and steps were needed." (CTA Am. Compl., Ex. L to Dec. of Cecchi [17-1], ¶ 51.) Not all of the allegations, however, are so explicit—especially those recited under the general negligence claim. For instance, the CTA alleges that Collins "[f]ail[ed] to construct the ERS and Open-Cut excavations in a skillful, professional, workmanlike and prudent manner," "[f]ail[ed] to construct appropriate bracing necessary to support the ERS and Open-Cut excavations," and "[f]ail[ed] to take reasonable precautions while operating equipment or supervising same . . . ." (*Id.* ¶ 45.) Each of these allegations, particularly the one concerning the operation of equipment, could be construed to cover conduct that "is predominantly . . . physical or manual in nature." *State St. Bank*, 207 Ill. App. 3d at 967, 567 N.E.2d at 47. As Collins notes, those allegations are similar to those made in *Design Professionals Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, No. 04 C 5214, 2005 WL 3159245, at *6 (N.D. Ill. Nov. 22, 2005), in which a court in this district held that an insurer had a duty to defend an architect because the "fail[ure] to provide proper scaffolding, ladders, work platforms, braces and supports" did not fall within the professional services exclusion. "[S]uch activities," the court reasoned, "are incidental to the professional services offered by an architect or engineer and involve physical or manual activities at the construction site."[1] *Id.*

---

[1] Travelers offers two reasons that *Design Professionals* is distinguishable, but neither is persuasive. First, Travelers insists that the case is inapposite because the insurer in that case was estopped from introducing extrinsic evidence. (*See* Def.'s Mem. on Summ. J. [34] at 12–13; Def.'s Reply Mem. in Supp. of Summ. J. [42] at 6.) But estoppel was only one issue for

The cases that Travelers cites are distinguishable. In *Ohio Security Insurance Co. v. Premier Pain Specialists*, No. 17 C 5937, 2018 WL 3474537, at *4 (N.D. Ill. July 18, 2018), the court held that a professional services exclusion applied to an allegation that a medical clinic kept a surgery recovery room in an unsafe condition, had faulty equipment, and had a faulty design. The court found the professional services exclusion directly applicable because "creat[ing] a reasonably safe recovery room is shot through with decision-making that relies on 'specialized knowledge.'" *Id.* This case differs; unlike a medical clinic's responsibility for safe surgical conditions, an engineering firm might lack the specialized knowledge to operate equipment or the skill required to manually construct the ERS or excavations. The court in *Kilfoy*, 375 Ill. App. 3d at 535–36, 874 N.E.2d at 201–02, held that a professional services exclusion relieved an insurer of the duty to defend an eye surgery clinic that had allegedly hired unqualified doctors because "the determination of whether a physician is qualified to render professional services requires specialized knowledge and skill. So too does the operation and management of a surgical facility." Here, in contrast, reading the CTA complaint in the light favorable to Collins, it can be understood to allege that Collins engaged in some manual labor beyond an engineer's specialized knowledge. Finally, in *Juneau Associates*, 2015 WL 11439066, at *5–6, the court held that failing "to raise overhead power lines and to post warning signs regarding the presence of uninsulated overhead lines" was a "professional service" because those actions were "supervisory" in nature or could constitute "inspection activities," both of which were enumerated as part of the definition of "professional services" in the insurance policy at issue. In contrast, no part of the professional

---

the *Design Professionals* court, and it does not render the court's interpretation of the underlying complaint and the professional services exclusion irrelevant. Second, Travelers points to a footnote in which the court explains that its conclusion depends in part on the fact that "neither party offer[ed] much of an explanation as to *why* failing to provide proper scaffolding, ladders, braces, etc. was or was not an 'architect, engineer or surveyor professional service' or 'architectural, engineering, inspection, or supervisory activity.'" *Design Prof'ls*, 2005 WL 3159245, at *6 n.2. Travelers argues that the present case is different because it has explained how the CTA's allegations are professional services. In fact, however, Travelers has not explained how some of the CTA's allegations, such as "[f]ailing to take reasonable precautions while operating equipment," are professional services.

services exclusion in this case would seem to cover manual construction activities or operating machinery.

Even if the CTA complaint contains allegations concerning conduct not covered by the professional services exclusion, Travelers argues that it still has no duty to defend because of extrinsic evidence that the court should consider. "[I]nsurance coverage typically turns on the allegations in the complaint against the insured and nothing else." *Sentinel Ins. Co., Ltd. v. Serra Int'l*, 119 F. Supp. 3d 886, 891 (N.D. Ill. 2015). Nonetheless, "many Illinois courts will consider outside information, including other pleadings, when deciding summary judgment motions dealing with coverage." *Id.* "The only time such evidence should not be permitted is when it tends to determine an issue crucial to the underlying lawsuit." *Fidelity & Cas. Co. v. Envirodyne Eng'rs, Inc.*, 122 Ill. App. 3d 301, 304–05, 461 N.E.2d 471, 474 (1st Dist. 1983) (citing *Maryland Cas. Co. v. Peppers*, 64 Ill. 2d 187, 355 N.E.2d 24 (1976)); *see also Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 461–62, 930 N.E.2d 1011, 1020 (2010) (embracing this rule from *Envirodyne*). That is, the court may look to evidence other than the CTA and Walsh complaints so long as such evidence does not "involve[ ] an 'ultimate fact,' meaning a fact that 'would estop the [CTA or Walsh] in the underlying case from pursuing one of [its] theories of recovery' or one in which '"an issue crucial to the insured's liability" in the underlying case is determined.'" *Clarendon Am. Ins. Co. v. B.G.K. Sec. Servs., Inc.*, 387 Ill. App. 3d 697, 704, 900 N.E.2d 385, 393 (1st Dist. 2008) (quoting *Envirodyne*, 122 Ill. App. 3d at 307, 461 N.E.2d at 475).

Travelers argues that the court should consider two items of extrinsic evidence: Collins's contract with Walsh and its answer to the CTA's amended complaint. (*See* Def.'s Mem. on Summ. J. [34] at 2, 7, 10–11.) The contract describes the scope of the firm's work as "professional design services" and notes that "[a]ny additional scope of work will not be performed without prior written authorization from Walsh Construction." (Ex. G to Decl. of Cecchi [17-1] at 912.) Because there is no indication that Walsh authorized Collins to engage in additional work, Travelers argues that Collins must have performed nothing more than professional services at the MWRD site. (Def.'s

Mem. on Summ. J. [34] at 10.)  Similarly, in its answer to the CTA complaint, Collins "admits only those duties imposed by law and only that scope of service included in its written subcontract" with Walsh.  (Ex. B to Def.'s Answer [25-2] ¶ 44.)  Travelers interprets this language as a denial that Collins performed any work beyond the "professional design service" that it agreed to in the contract with Walsh.  This denial, Travelers argues, precludes any contention on the part of Collins that that the CTA's allegations give rise to Travelers's duty to defend.  (*See* Def.'s Mem. on Summ. J. [34] at 10.)  The court is unconvinced.

To begin with, considering of this extrinsic evidence could have an improper preclusive effect.  In the CTA's response to Collins's motion to dismiss the original complaint, the CTA noted that it alleged that "Collins' work consisted of both professional services (e.g., design work for the Open-Cut Excavation and ERS) and non-professional services, standard construction-type services (e.g., work performed onsite during excavation, monitoring, etc.) that implicate both professional negligence and standard negligence."  (The CTA's Resp. to Collins's Mot. to Dismiss, Ex. H to Decl. of Cecchi, [17-1] at 6.)  Because the CTA was "unaware of Collins' specific involvement with the actual excavation work and site monitoring," it asked that the state court not dismiss the general negligence claim before it had the opportunity to engage in discovery.  (*Id.* at 4–5.)  This indicates that whether Collins was engaged in only professional services was an issue—and potentially a critical one—in the underlying litigation, rendering it inappropriate for the court to consider the extrinsic evidence that Travelers points to.

Moreover, Collins's contract with Walsh and its denial of an allegation in the CTA's complaint are not sufficient to establish that the CTA's claims fall within the professional services exclusion.  *See Hurst-Rosche Eng'rs*, 51 F.3d at 1342 ("The burden of proving that a claim falls within an exclusion rests squarely on the insurer".)  This case is distinguishable from *Envirodyne*, a 1983 state court case that has often been followed by Illinois courts.  *See Scottsdale Ins. Co. v. City of Waukegan*, 80 F. Supp. 894, 898–99 (N.D. Ill. 2015) (discussing "*Envirodyne* and its progeny").  In that case, the state appellate court upheld a trial court's use of extrinsic evidence

13

in deciding that an insurer had no duty to defend the insured because of a professional services exclusion. *Envirodyne*, 122 Ill. App. 3d at 307–08, 461 N.E.2d at 475–76. An employee at a construction project sued the insured—a construction engineering firm—for personal injuries suffered at the site, alleging that the insured, along with the state highway authority, had negligently "erected, constructed, placed or operated or caused to be erected, constructed, placed or operated, a certain scaffold." *Id.* at 302–03, 461 N.E.2d at 472–73. Although that allegation, on its face, would not describe activities confined to professional services, the trial court looked to extrinsic evidence to determine that the insured had not in fact physically constructed the scaffold and therefore had engaged only in professional services. *Id.* at 303, 461 N.E.2d at 473. First, the trial court reviewed the insured's contract with the highway authority, which limited its duties to construction engineering. *Id.* Second, the trial court ordered the deposition of an employee of the insured, who testified "that he was unaware of any functions performed by [the insured] at the job site other than those which were architectural or engineering in nature." *Id.* at 303–04, 461 N.E.2d at 473. Reviewing this extrinsic evidence and reaching such a conclusion was not an error, the appellate court held, because doing so would not stop the plaintiff in the underlying case from raising a theory of liability. *Id.* at 307–08, 461 N.E.2d at 476.

Contrary to Travelers's contentions, the court does not find *Envirodyne* to control the present case. True, in both that case and this one the insured had a contract that apparently obligated the insured to perform only professional services. However, Travelers has not produced any evidence as persuasive as the deposition in *Envirodyne*. Collins's contract with Walsh does not negate the possibility that Collins engaged in manual labor, such as construction activity and the operation of machinery, as the CTA has alleged. *See U.S. Fid. & Guar. Co. v. VOA Assocs., Inc.*, No. 08 C 862, 2009 WL 2763973, at *3 (N.D. Ill. Aug. 27, 2009) ("Although the contract limited VOA's duties with respect to any construction projects, it did not rule out the possibility at VOA undertook other construction-related activities during the project for which it could incur

14

liability.").[2]  And the court reads Collins's denial in its answer to the CTA's complaint as nothing more than boilerplate; Collins's statement that it has only those duties imposed by law amounts to a statement that Collins recognizes its common law duty of care.  Such a recognition is not akin to testimony describing what Collins's personnel actually did or did not do at the construction site.  Without more evidence that the CTA action concerns only professional services, Travelers has fallen short of meeting its burden of proving that the policy exclusion applies.  Even if this evidence suggests that Collins engaged only in professional services, that is simply not enough to relieve Travelers of its duty to defend.  See Illinois Tool Works Inc. v. Travelers Cas. & Sur. Co., 2015 IL App (1st) 132350, ¶ 10, 26 N.E.3d 421, 425 (1st Dist. 2015) (holding that an insurer had the duty to defend even where the insured "is unlikely to actually be found liable in the underlying suits").

## CONCLUSION

For the foregoing reasons, the court grants Plaintiff/Counter-Defendant Collins's motion for partial summary judgment [14] and denies Defendant/Counter-Plaintiff Travelers's motion for partial summary judgment [33].

ENTER:

Dated:  March 27, 2020

REBECCA R. PALLMEYER
United States District Judge

---

[2]  Travelers attempts to distinguish VOA by pointing to a footnote in Premier Pain, 2018 WL 3474537, at *5 n.4, in which Judge Kennelly—who authored both the Premier Pain and VOA opinions—states that VOA "does not interpret the scope of a professional services exclusion, but only whether a reasonable factfinder could conclude the insurer provided the insured notice it was reserving its rights under the exclusion."  However, VOA, 2009 WL 2763973, at *3–4, analyzed whether the insurer had provided appropriate notice only because the court had concluded that the insurer did have the duty to defend.

15