**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| COLLINS ENGINEERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-01203 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| TRAVELERS PROPERTY CASUALTY | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Collins Engineers, Inc. ("Collins") was one of the subcontractors hired by Walsh Construction Company II ("Walsh") to work on a project for the Metropolitan Water Reclamation District of Greater Chicago ("MWRD") involving the construction of ultraviolet disinfection facilities at a water reclamation plant in Skokie, Illinois. Part of the project required excavation work at a site close to an embankment supporting tracks for the Chicago Transit Authority's ("CTA") Yellow Line. In May 2015, a portion of that embankment collapsed, causing damage to the Yellow Line tracks and disrupting train service for several months. Alleging that the excavation work caused the embankment collapse, the CTA sued several of the parties involved in the MWRD project, including Collins and Walsh, in state court ("CTA Action"). In turn, Walsh filed a separate action in state court against Collins and other subcontractors involved in the project ("Walsh Action"). Collins then brought this declaratory judgment action after its insurer, Defendant Travelers Property Casualty Company of America ("Travelers"), declined to defend Collins in either the CTA Action or the Walsh Action. Now before the Court is Collins's motion for partial summary judgment, in which it requests that the Court find that Travelers has a duty to defend Collins in the Walsh Action and to indemnify

Collins for its settlement of the CTA Action. (Dkt. No. 106.) For the reasons that follow, the motion is granted.

## BACKGROUND

### I.     Scope of the Record

The Court begins with a preliminary comment on the procedural history of this case and the scope of the record.

As part of its response to Collins's opening submissions, Travelers filed a motion to strike certain evidence that Collins included as part of its Local Rule 56.1 statement of facts. Specifically, Travelers sought to exclude certain portions of a declaration Collins submitted from its president, Daniel G. Cecchi, as well as some of the exhibits attached to the declaration. (Dkt. No. 122.) Collins, in turn, filed its own motion to strike a declaration from Lee D. Stephenson, a claims manager at Travelers, that Travelers had included as part of its statement of additional facts. (Dkt. No. 131.) The Court[1] ultimately denied Travelers's motion to strike, stating that it would make any admissibility determinations with respect to the evidence in the declaration at the time it resolved the motion for partial summary judgment. (Mar. 29, 2022 Order at 2, Dkt. No. 140). The Court separately granted Collins's motion to strike the Stephenson declaration. (*Id.* at 3–4.) Accordingly, this Court does not consider the Stephenson declaration in resolving the instant motion for summary judgment, and it will discuss the admissibility of the evidence in the Cecchi declaration, as necessary, below.

---

[1] This case was originally assigned to Judge Pallmeyer, then reassigned to Judge Valderrama on September 28, 2020, and then reassigned again to Judge Maldonado on October 3, 2022. Upon Judge Maldonado's confirmation to the Court of Appeals for the Seventh Circuit, the case was reassigned for the fourth time on July 10, 2024, to Judge Wood. This opinion uses the term "the Court" or "this Court" when referencing rulings or actions by any of the judges who have presided over the case.

Travelers also filed a motion for leave to file a sur-reply in further response to Collins's motion for partial summary judgment, arguing that it was necessary to file an additional brief to address two declarations that Collins submitted as part of its reply, including a second declaration from Cecchi. (Dkt. No. 134.) Travelers indicated that it needed the additional submission to make certain arguments it had not raised in its response brief, but which it had "reserved" to make at a future time in the event the Court did not grant its motion to strike the Cecchi declaration and exhibits. The Court denied Travelers's motion, however, noting that "Travelers should not have based its entire response brief on the hope that the Court would agree with its position" and grant its motion to strike. (Mar. 29, 2022 Order at 4.) With respect to the new declarations that Collins submitted with its reply, while the Court did not allow Travelers to file further briefing to address the materials, the Court did state that, to the extent it determined that Collins had improperly submitted new evidence, the Court would not consider that evidence in resolving the summary judgment motion. (*Id.*) Where necessary, the Court will note below its admissibility determinations with respect to Collins's additional materials submitted with its reply.

## II. Factual Background

Subject to the preliminary matters discussed above, the following facts are undisputed unless otherwise noted.

### A. The Travelers Insurance Policy

Travelers issued Commercial Insurance Policy No. P-630-7A377680-TIL-14 to Collins for the Policy Period November 1, 2014, to November 1, 2015 ("Policy"). (Def.'s Resp. to Pl.'s Statement of Material Facts ("DRPSF") ¶ 5, Dkt. No. 121.) Relevant here, the Policy provides that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies," and further that Travelers

3

"will have the right and duty to defend the insured against any 'suit' seeking those damages." (*Id.* ¶ 7.)

Property damage is defined under the Policy as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or [l]oss of use of tangible property that is not physically injured." (*Id.* ¶ 11.) A "suit" is defined under the Policy as "a civil proceeding in which damages because of . . . 'property damage' . . . to which this insurance applies are alleged." (*Id.* ¶ 12.) The limits under the Policy are $1 million for each occurrence or $2 million in the aggregate. (*Id.* ¶ 6.)

The Policy additionally includes a "professional services" endorsement, which states that "[t]his insurance does not apply to . . . 'property damage' arising out of the rendering of or failure to render any 'professional services.'" (*Id.* ¶ 15.) "Professional services" under the Policy's endorsement means "any service requiring specialized skill or training," which includes, among other things, services such as the preparation of reports, maps, or surveys, engineering or surveying activities, or job supervision, inspection, or quality control. (*Id.* ¶ 16.)

### B. The MWRD Project and the Underlying State Court Litigation

Prior to the embankment collapse on May 17, 2015, the MWRD hired various parties to build ultraviolet disinfection facilities at a water reclamation plant in Skokie, Illinois. (*Id.* ¶¶ 20–22.) Among those was Walsh, the project's general contractor, and Walsh in turn hired Collins to perform various services. (*Id.* ¶¶ 23, 25, 42.) The project included significant excavation work, including the construction of "two large braced earth retention structures" ("ERS") and "open-cut excavations." (*Id.* ¶ 24.) Collins was hired to perform certain engineering and design services associated with the project, including preparation of plans for the "open-cut excavations," as well as plans for the construction of the two braced earth retention structures. (*Id.* ¶ 25.) Collins was

allegedly on site during the project performing various services associated with its responsibilities. (*Id.*)

On May 17, 2015, a portion of an embankment supporting the CTA Yellow Line tracks collapsed, damaging the tracks and their structural support. (*Id.* ¶¶ 19, 26.) Four days later, on May 19, 2015, Collins notified Travelers about the collapse, via a communication from Collins's broker. (Suppl. Cecchi Decl. ¶ 2, Dkt. No. 127.) Travelers responded that same day with a claim reporting acknowledgement form, and then followed up by email a few days later on May 22, 2015, acknowledging that Collins's agent had placed Travelers on notice of the incident. (Suppl. Cecchi Decl. ¶¶ 3–4; Suppl. Cecchi Decl., Ex. B, Dkt. No. 127-2.) Then, around March 18, 2016, Travelers sent a letter to Collins with respect to its potential claim for coverage under the Policy, stating that Travelers was issuing a reservation of rights in advance of a claim being made. (Suppl. Cecchi Decl. ¶ 5; Suppl. Cecchi Decl., Ex. C, Dkt. No. 127-3.) In the letter, Travelers stated that, while no claim for damages had yet been made against Collins, Travelers believed that if any such claim were made "there will likely not be [any] coverage afforded." (*Id.*) Travelers cited the Policy's professional services endorsement excluding coverage for property damage arising out of Collins's failure to render professional services. (Suppl. Cecchi Decl., Ex. C.)[2]

Eventually, on July 16, 2018, the CTA filed the CTA Action in the Circuit Court of Cook County against Walsh, Collins, and several of the other contractors involved in the MWRD

---

[2] The facts recited in this paragraph indicating that Collins first notified Travelers about the embankment collapse on May 19, 2015, and that Travelers sent Collins communications about a potential claim in May 2015 and March 2016, all come from one of the additional Cecchi declarations that Collins submitted with its reply brief in support of its motion for summary judgment. As discussed below, the Court finds that these particular facts may be considered because they are responsive to matters placed at issue in Travelers's response brief.

project (*Chi. Transit Auth. v. Walsh Constr. Co. II, LLC*, Case No. 2018L007251). (DRPSF ¶ 17.) The CTA alleged that the contractors' negligence had led to the embankment collapse that damaged the Yellow Line tracks. Specifically, the CTA claimed that the collapse was due to the failure of an ERS to withstand soil pressures, and that the various contractors' "negligent excavation work, construction work project oversight, geotechnical work, design and engineering caused the" embankment collapse. (*Id.* ¶¶ 26–27.) Regarding Collins, the CTA alleged that it breached its duty of care to the CTA through several negligent acts or omissions, including, but not limited to:

> Failing to construct the ERS and Open-Cut Excavations in a skillful, professional, workmanlike and prudent manner; . . . Failing to meet applicable safety standards and practices in the excavation and construction of the ERS and Open-Cut Excavations . . . ; Failing to construct appropriate bracing necessary to support the ERS and Open-Cut Excavations; . . . [and] Failing to take reasonable precautions while operating equipment or supervising same in order to prevent the embankment collapse and resulting damage.

(*Id.* ¶ 31.)

On October 9, 2018, Walsh filed the Walsh Action in the Circuit Court of Cook County, asserting claims against Collins as well as several of the same parties named as defendants in the CTA Action (*Walsh Constr. Co. II v. Greeley & Hansen LLC*, Case No. 2018L010951). (DRPSF ¶¶ 34–35.) Against Collins, in particular, Walsh asserted claims for professional negligence, negligent misrepresentation, and breach of contract. (Cecchi Decl., Ex. G, Walsh Compl., Dkt. No. 109-7.) In short, Walsh alleged that, as a result of Collins's negligent acts and omissions in the MWRD project, Walsh was required to pay to repair damage that "resulted from [Collins's] culpable conduct." (DRPSF ¶ 41.)

The Walsh Action also named as a defendant Ground Engineering, Inc. ("GEI"), another subcontractor hired to work on the MWRD project. (*Id.* ¶ 34.) On April 16, 2019, GEI filed a

counterclaim in the Walsh Action against Collins, pleading one count for contribution. (Pl.'s

Resp. to Def.'s Statement of Additional Facts ("PRDSAF") ¶ 39, Dkt. No. 129; Def.'s Statement

of Additional Facts, Ex. B, Dkt. No. 124-2.) On November 4, 2019, GEI filed a motion for leave

to file an amended counterclaim against Collins. (DRPSF ¶ 44; Suppl. Cecchi Decl. ¶ 9; Suppl.

Cecchi Decl., Ex. F, Dkt. No. 127-6.) The amended counterclaim was accepted and officially

docketed on November 12, 2019. (Suppl. Cecchi Decl. ¶ 10; Suppl. Cecchi Decl., Ex. G, GEI

Am. Countercl, Dkt. No. 127-7.)[3] In the amended counterclaim, GEI emphasizes that Walsh's

complaint alleges that the embankment collapse was caused by the negligent acts or omissions of

the various contractor defendants, including Collins and GEI. (DRPSF ¶ 45; GEI Am. Countercl.

¶ 1.) GEI further claims that, if Walsh is entitled to any recovery from GEI, then GEI is entitled

to contribution and indemnification from Collins, because Walsh's "recovery shall be based, in

whole or part, on the negligence of Collins." (DRPSF ¶ 46; GEI Am. Countercl. ¶ 3.) GEI goes

on to allege that Collins "committed one or more of the following negligent acts or omissions,"

including that it:

> Failed to design and construct the ERS and Open-Cut Excavations in a skillful,
> professional, workmanlike and prudent manner; . . . Failed to meet applicable
> safety standards and practices in the design, excavation and construction of the ERS
> and Open-Cut Excavations, specifically including, but not limited to, failing to meet
> the appropriate factor of safety threshold acceptable to the industry for these
> activities; [and] Failed to take all necessary and reasonable precautions so as to

---

[3] In its statement of facts, Collins suggests that GEI's counterclaim was **filed** on November 4, 2019.
(DRPSF ¶ 44). It clarifies in its reply submissions, however, that what GEI actually filed on November 4
was a motion for leave to file an amended counterclaim, which included the proposed amended
counterclaim as an attachment, and the amended complaint was officially docketed on November 12,
2019. (Suppl. Cecchi Decl. ¶¶ 9–10; *see also* Cecchi Decl., Ex. L, Dkt. No. 109-12.) Travelers pointed
out the error in its motion to strike, and it sought to exclude the GEI motion for leave and its attached
proposed amended pleading as inadmissible hearsay and as not properly authenticated. (Def.'s Mot. to
Strike Cecchi Decl. at 2, Dkt. No. 122.) As noted above, however, the Court denied Travelers's motion to
strike, and indicated it would rule on the admissibility of the evidence when it came time to rule on
summary judgment. For reasons elaborated upon below, the Court finds that the GEI state court pleadings
are admissible for consideration at summary judgment, as they are not hearsay and are capable of
authentication at trial.

prevent any work performed by its employees, agents, contractors or subcontractors
from causing damage to the embankment.

(DRPSF ¶ 47; GEI Am. Countercl. ¶ 3.)

### C.     Travelers Declines to Defend and Collins Initiates Present Action

On July 23, 2018, roughly a week after the CTA filed its lawsuit, Collins provided

Travelers with notice of the CTA Action via Collins's insurance broker. (DRPSF ¶ 48.) The

communication to Travelers indicated that Collins was "seeking defense and indemnity." (*Id.*)

On August 17, 2018, Travelers responded with a letter to Collins stating that it was disclaiming

any duty to defend or indemnify Collins for the CTA Action because it believed that the

allegations fell within the definition of "professional services" and therefore coverage was

excluded under the Policy's professional services endorsement. (*Id.* ¶ 49.) In its denial letter,

Travelers noted that, under Illinois law, if it disclaimed a duty to defend "it must also file a

declaratory judgment action against Collins in order to preserve its right to rely on all of the

terms of its Policy." (Cecchi Decl., Ex. E at 3, Dkt. No. 109-5.) Travelers requested that Collins

withdraw its tender, so that the parties could avoid the expense of a declaratory judgment action.

(*Id.*)

On September 24, 2018, Collins responded to Travelers's denial letter stating that it

disputed that the CTA Action fell within the professional services exclusion and requesting that

Travelers withdraw its denial of coverage and agree to defend Collins. (DRPSF ¶ 50.) Collins

sent another letter to Travelers on November 21, 2018, in which it provided updates on the

underlying litigation and reiterated its position that Travelers's coverage denial was an error. (*Id.*

¶ 51.) On February 15, 2019, Collins sent Travelers an additional letter with further updates

related to the underlying litigation and reiterating Collins's view that Travelers's denial of

coverage was improper. (*Id.* ¶ 52.) Collins further stated that Travelers's continued denial of

coverage made it necessary for Collins to proceed with filing a lawsuit seeking declaratory relief. (*Id.*)

That same day, February 15, 2019, Collins filed the present action against Travelers seeking, among other things, a declaratory judgment that Travelers had a duty to defend Collins in both the CTA Action and the Walsh Action. (*Id.* ¶ 53.) On April 17, 2019, Collins filed a motion for partial summary judgment on its declaratory judgment claim, asking the Court to find that Travelers had a duty to defend Collins in the underlying state court litigation. (Dkt. No. 14.) On May 15, 2019, Travelers filed an answer and its own counterclaim for declaratory judgment, and then on June 25, 2019, proceeded to file its own cross-motion for summary judgment, in which it asked the Court to find that the professional services exclusion in the Policy barred any coverage to Collins for defense and indemnity of the CTA and Walsh Actions. (Dkt Nos. 25, 33.)

The Court issued its decision on the parties' cross-motions for summary judgment on March 27, 2020. (Dkt. No. 58); *see also Collins Eng'rs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 449 F. Supp. 3d 778, 780 (N.D. Ill. 2020). The Court explained that Illinois courts typically give force to a "professional services" exclusion, like the one in the Travelers Policy, where the insured was engaged in an activity that involved "specialized knowledge, labor, or skill, and [was] predominantly mental or intellectual as opposed to physical or manual in nature." *Collins*, 449 F. Supp. 3d at 785 (quoting *State St. Bank & Tr. v. INA Ins. Co.*, 567 N.E.2d 42, 47 (Ill. App. Ct. 1991)). With respect to the Walsh Action, the Court reviewed the complaint's allegations and found it "apparent that all concern conduct involving specialized knowledge, labor, or skill, and [was] predominantly mental or intellectual in nature." *Id.* at 786 (internal quotation marks omitted). The Court thus found that Travelers had no duty to defend the Walsh Action under the Policy's professional services exclusion. *Id.*

With respect to the CTA Action, however, the Court found that Travelers did have a duty to defend. *Id.* at 786–90. The Court observed that the CTA Action's complaint included two counts against Collins, one for professional negligence and one for general negligence. *Id.* at 782. It then found that many of the allegations in the professional negligence claim, like the allegations in the Walsh complaint, "plainly concern[ed] conduct that [was] predominantly mental or intellectual in nature" and therefore would fall under the professional services exclusion. *Id.* at 786. But the Court found that not ***all*** the CTA Action's allegations about Collins fell within that same category of "predominantly mental or intellectual" conduct, "especially those recited under the general negligence claim." *Id.*  Instead, some of the CTA's allegations in the general negligence count, including its claim that Collins had negligently operated equipment, "could be construed to cover conduct that is predominantly physical or manual in nature." *Id.* (internal quotation marks omitted). Given that some of the allegations potentially fell outside the conduct covered by the professional services exclusion, and therefore were potentially covered by the Policy, the Court found that Travelers had a duty to defend Collins in the CTA Action.

### D.     Collins Tenders GEI Counterclaim to Travelers

GEI filed its amended counterclaim against Collins in the Walsh Action on November 12, 2019, which was after the parties had completed briefing on their cross-motions for summary judgment in this case but before the Court had issued its ruling. On November 21, 2019, counsel for Collins notified Travelers about GEI's amended counterclaim, and stated its belief that the allegations in the counterclaim showed that Travelers had been, and continued to be, improperly denying coverage. (DRPSF ¶ 61; Cecchi Decl., Ex. M, Dkt. No. 109-13.) Travelers responded on December 12, 2019, asserting that the GEI counterclaim did not provide any new information that would cause Travelers to reconsider its coverage position. (DRPSF ¶ 62.)

In January 2020, the parties to the CTA Action entered into a settlement resulting in the dismissal of the CTA Action, including as to Collins, in exchange for, among other things, a substantial contribution from Collins. (*Id.* ¶¶ 33, 57.) On April 29, 2020, after the Court issued its ruling on the parties' cross-motions for summary judgment, Collins's counsel again wrote to Travelers's counsel stating that, in light of the Court's ruling on summary judgment, the CTA Action settlement, and the GEI amended counterclaim in the Walsh Action, it was Collins's view that Travelers had a duty to defend and indemnify Collins in connection with both the CTA Action settlement and the Walsh Action. (*Id.* ¶ 63.)

On July 27, 2020, Collins proceeded to file a First Amended Complaint in this case, in which it noted the developments in the underlying litigation since the parties briefed their cross-motions for summary judgment, including the GEI amended counterclaim and the settlement of the CTA Action. (First Am. Compl. ¶¶ 43, 45, Dkt. No. 75; *see also* DRPSF ¶ 66.) Collins alleges that Travelers has yet to pay any defense expenses or costs incurred in connection with the CTA Action and has not paid any part of the settlement of claims against Collins in the CTA Action. (FAC ¶ 41.) In Counts I and II, Collins brings two claims for declaratory relief: Count I seeks a declaration that Travelers has a duty to defend Collins in the entirety of the underlying litigation, including the Walsh Action; and Count II seeks a declaration that Travelers has a duty to indemnify Collins for the CTA Action settlement. The First Amended Complaint also asserts causes of action for breach of contract (Count III), and for subrogation, contribution, or reimbursement (Count IV).[4]

---

[4] The claim in Count IV for subrogation, contribution, or reimbursement was assigned to Collins by Collins's professional liability insurance carrier. (FAC ¶ 3.) Neither this claim, nor the breach of contract claim, are subjects of the instant motion.

## DISCUSSION

Collins has moved for summary judgment with respect to Counts I and II of its First Amended Complaint. Specifically, Collins asks the Court to find, as a matter of law, that Travelers has a duty to defend Collins in the Walsh Action in light of the GEI amended counterclaim. Further, Collins requests that the Court hold that Travelers is estopped from asserting any coverage defenses with respect to the CTA Action settlement.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). Additionally, the Court notes that, under Illinois law, which the parties agree governs the dispute, "[t]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resol. Tr. Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993); *see also Roman Catholic Diocese of Springfield in Ill. v. Md. Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998) ("Illinois law . . . treats the interpretation of an insurance policy and the respective rights and obligations of the insurer and the insured as questions of law that the court may resolve summarily.").

### I.     Travelers's Duty to Defend in the Walsh Action

Under Illinois law, "to determine whether an insurer has a duty to defend its insured," the Court must "compare the factual allegations of the underlying complaint (or in this case, counterclaim) to the language of the insurance policy." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010). In making the comparison, the Court must "construe the allegations liberally in favor of the insured." *BASF AG v. Great Am. Assurance Co.*, 522 F.3d

813, 819 (7th Cir. 2008). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co*., 611 F.3d 339, 346 (7th Cir. 2010) (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co*., 607 N.E.2d 1204, 1212 (Ill. 1992)).

Further, "[a]n insurer's duty to defend extends to cases where the complaint contains several theories or causes of action against the insured and only one of the theories is within the policy's coverage and the others may not be." *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc*., 728 N.E.2d 680, 692 (Ill. App. Ct. 2000). As long as at least one claim in a lawsuit against the insured is potentially covered, the insurer has a duty to defend the ***entire*** suit. *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co*., 771 F.3d 391, 399 (7th Cir. 2014); *see also Robert R. McCormick Found. v. Arthur J. Gallagher Risk Mgmt. Servs., Inc*., 52 N.E.3d 649, 652 (Ill. App. Ct. 2016) ("If the facts alleged in the underlying complaint fall within, or potentially within, the policy's zone of coverage, then the insurer is obligated to defend the ensured for the ***entire*** action." (emphasis added)).

Collins argues that the Court's reasoning in its March 27, 2020, opinion—in which it found that Travelers had a duty to defend the CTA Action—requires the Court to find that Travelers must defend the Walsh Action in light of the November 2019 GEI amended counterclaim. It notes that the Court previously found that the Policy's professional services endorsement did not excuse Travelers from defending the CTA Action because the CTA Action alleged some conduct that was "predominantly physical or manual in nature" such that it did not fall within the exclusion. *Collins*, 449 F. Supp. 3d at 786. Although the Court previously found that Walsh's allegations against Collins fell within the professional services exclusion, Collins maintains that GEI's November 2019 amended counterclaim alleges the same type of conduct

13

that obligated Travelers to defend the CTA Action; that is, GEI alleges Collins is negligent for conduct that is "predominantly physical or manual in nature." Collins argues that these allegations in the GEI amended counterclaim trigger Travelers's duty to defend, which means Travelers has a duty to defend *the entire* Walsh Action.

In response, Travelers does not advance any arguments on the merits of whether the allegations in the GEI amended counterclaim trigger a duty to defend. Instead, Travelers advances two contentions that can best be characterized as procedural and evidentiary objections to Collins's motion for partial summary judgment. First, it argues that Collins has waived the opportunity to use the GEI amended counterclaim as a basis for coverage. Second, it argues that the GEI amended counterclaim is not properly admissible for consideration at summary judgment. The Court will address each of Travelers's arguments before turning to Collins's contention that the allegations in the GEI counterclaim trigger coverage.

### A. Waiver

First, Travelers argues that Collins has waived any opportunity to argue that the GEI amended counterclaim triggers a duty for Travelers to defend Collins in the Walsh Action. Travelers notes that GEI's original counterclaim was filed against Collins in April 2019. (PRDSAF ¶ 39.) Collins did not raise the original April 2019 counterclaim in the parties' prior cross-motions for summary judgment, and Travelers suggests that Collins's attempt to rely on the November 2019 amended counterclaim for coverage now "is tantamount to an improper motion for reconsideration and should be summarily denied." (Def.'s Opp'n at 12, Dkt. No 120.) Travelers argues that the November 2019 GEI amended counterclaim is not newly discovered evidence that would warrant reconsideration of the Court's prior ruling that Travelers had no duty to defend in the Walsh Action because the counterclaim was initially filed in April 2019 and Collins could have raised it in its prior motion for summary judgment. According to Travelers,

Collins should not be permitted to use its instant motion for summary judgment to advance arguments and legal theories for coverage it could have advanced before. Instead, the issue should be considered waived.

The Court does not agree that Collins has waived its opportunity to seek coverage under the Policy based on the November 2019 GEI amended counterclaim. As an initial matter, the Court rejects Travelers's attempts to frame Collins's motion for summary judgment as a motion for reconsideration. As it asserts in its reply, Collins is not asking the Court to reconsider its prior holding that the allegations in Walsh's complaint did not trigger a duty to defend. Rather, Collins is asking the Court to find that the allegations in the ***GEI amended counterclaim*** trigger a duty to defend, and Collins expressly states that it is only seeking a declaration that Travelers has a duty to defend the Walsh Action "as of the November 2019 Counterclaim forward." (Pl.'s Reply at 4, Dkt. No. 126.) While Travelers's duty to defend the Walsh Action was one subject of the Court's prior ruling, the Court only reviewed the allegations in Walsh's complaint, and the specific issue of whether the allegations in the November 2019 GEI amended counterclaim triggered a duty to defend was not before the Court. Collins's instant motion for partial summary judgment therefore cannot reasonably be understood as a request to reconsider something that the Court did not consider in the first place.

Insofar as Travelers argues that Collins was required to raise GEI's original counterclaim in its prior summary judgment briefing or seek leave to supplement that motion based on the November 2019 GEI amended counterclaim that was filed after briefing was complete, the Court is not persuaded. While Travelers is correct as a general matter that the failure to raise an argument in the first instance may result in waiver of that argument in future proceedings, it exclusively cites cases involving motions for reconsideration or the waiver of arguments on

appeal. (*See* Def.'s Opp'n at 12–14.)[5] The Court finds these cases to have little bearing on the issue of whether Collins is permitted to file an additional summary judgment motion based on a new legal theory for coverage—the factual basis of which only developed during the pendency of the prior motion for summary judgment. Rule 56(a) expressly allows for partial motions for summary judgment on limited issues or discrete parts of a case, and the Rule does not prohibit successive motions. Fed. R. Civ. P 56(a). In fact, the Seventh Circuit has held that it is within the district court's sound discretion whether to allow a party to file multiple successive motions for summary judgment, even where the party is expressly renewing a prior motion that was denied. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he filing of successive summary judgment motions is a matter within the discretion of the district court."); *see also Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir.1995) ("[T]he district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist.").

Further, Collins points to decisions in insurance coverage actions that have allowed successive motions for summary judgment on the issue of an insurer's duty to defend based on subsequent developments in the subject litigation. *See, e.g.*, *Winklevoss Consultants v. Fed. Ins. Co.*, 11 F. Supp. 2d 995, 996–97 (N.D. Ill. 1998) (noting that the court had previously found no duty to defend based on the original underlying complaint but finding such a duty on new cross-motions for summary judgment based on an amended complaint); *see also Millers Mut. Ins. Ass'n of Ill. v. Ainsworth Seed Co.*, 552 N.E.2d 254, 257–58 (Ill. App. Ct. 1989) (explaining that the insureds "will be entitled to new consideration" on the issue of the insurer's duty to defend if

---

[5] For example, Travelers cites a case from the Illinois Appellate Court, *Grainger v. Harrah's Casino*, 18 N.E.3d 265 (Ill. App. Ct. 2014), where the court found that a party had forfeited an argument **on appeal** by not raising it below and not developing the argument in its appellate briefing. *Id.* at 274.

the plaintiff in the underlying case amended its complaint in a way that brought the action under the policy's coverage). And, here, there were additional developments in the Walsh Action during the pendency of the earlier cross-motions for summary judgment. Accordingly, the Court finds that Collins's successive motion is proper, and it has not waived the opportunity to argue that the GEI amended counterclaim triggers a duty to defend in the Walsh Action.

**B.     Admissibility of GEI's Amended Counterclaim**

In addition to its waiver argument, Travelers argues that the November 2019 GEI amended counterclaim is not admissible for consideration at summary judgment. In a short paragraph, Travelers incorporates by reference its arguments from its motion to strike the Cecchi declaration, which was filed concurrently with its response brief. Travelers then states that it "reserves its rights" to file a response on the merits of the arguments raised by Collins in the event the Court denies its motion to strike. (Def.'s Opp'n at 15.)

After the present motion was fully briefed, the Court denied Travelers's motion to strike, and indicated that it would make a ruling on the admissibility of the November 2019 GEI amended counterclaim when it came time to rule on the motion for summary judgment. In its motion to strike, Travelers argued that the November 2019 GEI amended counterclaim lacks proper authentication. Specifically, Travelers noted that the counterclaim that Collins had attached as an exhibit is not the official counterclaim itself, but a motion to amend which GEI had filed in the Walsh Action. Travelers thus argued that the document was not authentic and also claimed that it was inadmissible hearsay.

Travelers's objections to the admissibility of the GEI counterclaim are wholly without merit. Travelers is correct that the copy of the November 2019 GEI amended counterclaim that Collins included as an exhibit to its opening submissions was merely a proposed pleading attached to a motion for leave to file and was not the officially docketed amended counterclaim

17

itself. But Collins has cleared up that issue in reply, noting that while GEI filed its motion for leave to file an amended counterclaim on November 4, 2019, the GEI amended counterclaim was accepted and docketed on November 12, 2019. (Suppl. Cecchi Decl. ¶¶ 9–10.) In support, Collins submits file-stamped copies of both the motion for leave to file and the amended counterclaim itself, reflecting the November 4 and November 12 filing dates. (Suppl. Cecchi Decl., Ex. F; Suppl., Cecchi Decl., Ex. G, GEI Am. Countercl.) The state court docket also reflects those filing dates. As the Court noted in its ruling on the parties' motions to strike, even unauthenticated documents may be admissible at summary judgment "if it appears that they are capable of authentication at trial." *Remmer v. Wexford Health Sources, Inc*., No. 19-cv-00420-NJR, 2021 WL 535542, at *4 (S.D. Ill. Feb. 12, 2021) (collecting cases). In light of the public docket and Collins's submissions of an additional declaration and file-stamped pleadings, the documents certainly appear capable of authentication at trial and are therefore admissible.[6]

Equally groundless is Travelers's hearsay objection. Collins does not offer the GEI pleadings for the **truth** of what they assert. To the contrary, Collins disputes the truth of GEI's claims in the pleadings about Collins's allegedly negligent conduct. (*See* Pl.'s Mem. in Supp. of Partial Mot. for Summ. J. at 2, n.3, Dkt. No 107 ("Although Collins recites the allegations asserted against it in the Underlying Litigation for the purposes of obtaining coverage benefits owed by Travelers, it does not admit it engaged in any negligent acts at the [MWRD] Project.").) Instead, Collins offers the pleadings to show that GEI's November 2019 amended counterclaim

---

[6] The Court observes that Travelers itself admits that it sent Collins a letter in December 2019 in direct response to the November 2019 GEI amended counterclaim. (DRPSF ¶ 62.) Specifically, Travelers acknowledged that, on December 12, 2019, it sent Collins a letter asserting that "the [GEI] Counterclaim does not provide any new information that would cause Travelers to reconsider its coverage position." (*Id*.) That admission makes Travelers's objection to the counterclaim's authenticity dubious, to say the least.

contains allegations that arguably fall under the Policy. *See, e.g.*, *Liberty Mut. Fire Ins. Co. v. Whelan*, No. 11-cv-0088-MJR-PMF, 2012 WL 13026967, at *8 (S.D. Ill. Feb. 13, 2012) ("[The plaintiff] has not offered the allegations of [the] negligence complaint for the truth of the matter they assert but rather offers these allegations to show that they fall outside the scope of policy coverage."). The pleadings are therefore not hearsay.

In short, the Court rejects Travelers's objections to the admissibility of the November 2019 GEI amended counterclaim. The Court can properly consider the amended counterclaim in determining whether it triggers a duty to defend under the Policy.

### C. Impact of GEI Amended Counterclaim on Travelers's Duty to Defend

Having rejected Travelers's arguments with respect to waiver and admissibility, the Court could stop its analysis of whether the GEI amended counterclaim triggered a duty to defend here. Since those were the only arguments Travelers raised in its response to Collins's motion for summary judgment—subject to its unavailing reservation of the right to argue the merits if its motion to strike were denied—the Court would be warranted in summarily granting summary judgment in Collins's favor.

To begin, Travelers cites no authority suggesting that it can decline to address a dispositive summary judgment argument on the merits in the hopes that the Court will simply agree with its threshold evidentiary and procedural arguments. The caselaw on waiver suggests the opposite—that Travelers's failure to respond to Collins's arguments on the merits should operate as a waiver of those arguments. *See, e.g.*, *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). As the Court observed in its prior order denying Travelers's motion for leave to file a sur-response, "Travelers should not have based its entire response brief on the hope that the Court would agree with its

position that the 11/4/2019 GEI Counterclaim submitted with the Cecchi Declaration could not be considered at summary judgment." (Dkt. 140 at 4.) Travelers's decision to forgo any argument on the merits is particularly puzzling given that its objections to the admissibility of the November 2019 GEI counterclaim are entirely baseless.[7] This Court need not reward Travelers's decision to rely on such groundless objections by granting it a second chance to advance those arguments on the merits it could have and should have made in the first place.

Notwithstanding Travelers's apparent waiver of any opposition to summary judgment, the Court agrees with Collins's contention that GEI's amended counterclaim triggers coverage for the same reasons that the CTA Action's complaint did. Both involve claims for "property damage," which would implicate the Policy. As to whether coverage may be excluded under the professional services endorsement, some of the allegations from the CTA Action's general negligence claim against Collins, which the Court found triggered a duty to defend, are similar if not identical to the allegations in GEI's amended counterclaim. For example, GEI's amended counterclaim alleges that Collins "[f]ailed to design and construct the ERS and Open-Cut Excavations in a skillful, professional, workmanlike and prudent manner." (GEI Am. Countercl. ¶ 3(b).) This allegation is nearly identical to one of the allegations from the CTA Action's complaint that the Court previously identified as suggesting conduct that was "predominantly physical or manual in nature," thereby placing the complaint outside the professional services

---

[7] Indeed, Travelers's suggestion that the Court simply ignore the very pleading that forms the basis of Collins's claim for a duty to defend strains credulity. *See Whelan*, 2012 WL 13026967, at *8 (rejecting a party's hearsay objections to the underlying complaint in a declaratory judgment action and noting that "the suggestion that this Court ***must ignore*** the underlying complaint . . . borders on the ridiculous"). Rather, "[i]t is beyond question that in the context of a declaratory judgment, this Court may (indeed ***must***) review the allegations of the underlying complaint and the pertinent insurance policies" to determine if there is a duty to defend. *Id*. And again, Travelers itself admits that it sent Collins a letter in recognition of the GEI amended counterclaim. That Travelers admits it sent an acknowledgement of the November 2019 GEI amended counterclaim makes its arguments that the Court should ignore those pleadings all the more tenuous.

exclusion. *Collins*, 449 F. Supp. 3d at 786 (concluding that the allegations in the CTA Action's general negligence claim, including the allegation that "Collins 'failed to construct the ERS and Open-Cut excavations in a skillful, professional, workmanlike and prudent manner' . . . . could be construed to cover conduct that 'is predominantly physical or manual in nature'"). Based on this identical allegation appearing in both cases, the Court's same logic from its prior ruling would seem to compel a finding that GEI's amended counterclaim triggers a duty to defend.

It is true the November 2019 GEI amended counterclaim is missing some of the other allegations from the CTA Action's complaint that the Court previously found indicative of "physical or manual conduct." Further, GEI includes other allegations that are similar to the ones from the Walsh Action complaint that the Court found more indicative of conduct that is "mental" or "intellectual in nature" thereby falling within the professional services exclusion, such as the allegation that Collins "[f]ailed to perform design work and engineering services." (GEI Countercl. ¶ 3(a).) However, as discussed above, for a complaint to trigger a duty to defend, it is only required that at least ***one*** claim potentially triggers coverage under a Policy. *See Phila. Indem. Ins.*, 771 F.3d at 398 (explaining that Illinois follows the "complete defense" rule, "which generally requires an insurer to provide a complete defense in a suit or action against its insured even if only one or some of the claims are potentially covered"). Further, the Court must construe the allegations in the GEI amended counterclaim "liberally in favor of the insured." *BASF AG*, 522 F.3d at 819.

Here, the November 2019 GEI amended counterclaim, like the CTA Action's complaint, includes some allegations suggesting that GEI's claim for contribution is based, at least in part, on conduct that is physical or manual in nature—in particular, the allegation that Collins was negligent in the design and construction of excavations that were part of the MWRD project. The

21

Court, consistent with its prior opinion, finds that those allegations fall outside the professional services exclusion and are thus sufficient to trigger a duty to defend in the entire Walsh Action.[8] Consequently, the Court finds as a matter of law that Travelers has a duty to defend Collins in the Walsh Action in light of the November 2019 GEI amended counterclaim.

## II. Travelers's Duty to Indemnify for the CTA Action's Settlement

Next, Collins asks the Court to find that Travelers must indemnify Collins for the settlement of the CTA Action. In particular, Collins argues that Travelers is estopped from asserting any coverage defenses under the Policy based on its refusal to defend Collins in the CTA Action.

Under Illinois law, when an insured tenders a complaint to its insurer seeking a defense and the insurer believes that the policy does not cover the claims asserted against the insured, the insurer cannot simply refuse to defend the insured. *See Am. Nat'l Fire Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 796 N.E.2d 1133, 1140 (Ill. App. Ct. 2003). Instead, the insurer generally has two options: (1) the insurer must defend the insured in the lawsuit under a reservation of rights; or (2) the insurer must seek a declaratory judgment that there is no coverage. *See Nautilus Ins. Co. v. Bd. of Dirs. of Regal Lofts Condo. Ass'n*, 764 F.3d 726, 732–33 (7th Cir. 2014) (citing *Standard Mut. Ins. Co. v. Lay*, 989 N.E.2d 591, 596 (Ill. 2013)). "When an insurer fails to act in either fashion and wrongfully denies coverage, the insurer is estopped from raising policy defenses to coverage." *Am. Nat'l Fire Ins. Co.*, 796 N.E.2d at 1140.

---

[8] Because Travelers failed to advance any merits arguments regarding whether the allegations of the GEI amended counterclaim triggered a duty to defend under the Policy outside the professional services exclusion, the Court will not speculate as to what arguments Travelers might have made in opposition.

To avoid estoppel, the insurer must take one of the above actions—defend under a reservation of rights or seek a declaration of no coverage—"within a reasonable time of a demand by the insured." *Nautilus*, 764 F.3d at 733 (quoting *Korte Constr. Co. v. Am. States Ins.*, 750 N.E.2d 764, 770 (Ill. App. Ct. 2001)).[9] In measuring the reasonable time between the insured's demand and a declaratory judgment action, Illinois courts have held that the date that matters is when the declaratory judgment case was first initiated by *either* party, not just the insurer. *See L.A. Connection v. Penn-Am. Ins. Co.*, 843 N.E.2d 427, 431 (Ill. App. Ct. 2006) (explaining that "it is the fact of the proceeding itself, and not the identity of the party initiating the proceeding, that is of legal import," and further noting that a contrary rule would mean that an insured could trigger estoppel simply by racing to the courthouse to file suit immediately).

Here, it is undisputed that Collins first tendered the CTA Action to Travelers for a defense on July 23, 2018, and Collins initiated the instant declaratory judgment action on February 15, 2019. Further, it is undisputed that Travelers did not defend Collins in the CTA Action under a reservation of rights nor did it make any defense payments at the time Collins initiated this suit, despite the fact that, as the Court ultimately concluded, Travelers did have a duty to defend Collins in the CTA Action under the Policy. The question for the Court is whether Travelers's failure either to defend Collins under a reservation of rights or seek a declaration of non-coverage for approximately seven months between July 2018 and February 2019,

---

[9] Some Illinois courts have taken slightly different approaches to the determination of whether an insurer took action promptly enough to avoid estoppel. Under one approach, a declaratory judgment action is timely as long as it is filed before the underlying suit ends, and another approach looks at whether trial or settlement was imminent when the declaratory judgment action was initiated. *See generally Sterigenics, U.S., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 619 F. Supp. 3d 852, 868 (N.D. Ill. 2022) (discussing various approaches by Illinois courts). The reasonable time test, however, appears to be the one favored by Illinois courts, and it is the standard that has been cited by the Seventh Circuit. *Nautilus*, 764 F.3d at 733. The parties here both analyze the estoppel issue under the "reasonable time" framework as well, so that is the approach the Court will take.

constituted an unreasonable delay such that it should be estopped from asserting any coverage defenses to indemnity.[10]

Courts in Illinois "have not adopted a bright line rule as to what constitutes a 'reasonable time'" for an insurer to act on an insured's request for a defense. *Sterigenics, U.S., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 619 F. Supp. 3d 852, 869 (N.D. Ill. 2022). Rather, the question of whether an insurer acted timely must be determined based on the particular facts and circumstances of each case. *See State Auto Mut. Ins. Co. v. Kingsport Dev., LLC*, 846 N.E.2d 974, 987 (Ill. App. Ct. 2006) ("[T]he 'reasonable time' test is a more flexible approach that allows the court to decide each case according to its own facts and circumstances . . . ."). In light of the fact-specific nature of the inquiry, Illinois state and federal courts have come to varying conclusions of what constitutes a reasonable time. But as a general matter, it can be said that courts will typically find that an insurer acts within a reasonable time if they take action within four months. *See, e.g.*, *L.A. Connection*, 843 N.E.2d at 433 ("Plaintiff has not cited, and our research has not revealed, any case holding that an insurer breached the duty to defend where a declaratory judgment action was commenced within four months."). On the other hand, where an insurer delays for an excess of 12 months, it is often found to have acted unreasonably. *See, e.g.*, *Zurich Specialties London Ltd. v. Village of Bellwood*, No. 07 CV 2171, 2011 WL 248444, at

---

[10] In passing, Travelers appears to argue that Collins has waived the opportunity to assert estoppel because the Court examined the extrinsic evidence offered by Travelers in support of its prior motion for summary judgment. Travelers appears to contend that courts can only consider extrinsic evidence in a duty-to-defend analysis when the insurer has filed a timely declaratory judgment action, and therefore the fact that the Court discussed extrinsic evidence in its prior ruling finding a duty to defend in the CTA Action means the Court must have already determined Travelers had acted timely, which would mean estoppel cannot apply. The Court need not dwell on this underdeveloped and conclusory argument that Travelers presents in just a few sentences. *See, e.g.*, *Betco Corp. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017) (noting that underdeveloped or conclusory arguments in response to motion for summary judgment are waived). It suffices to say that this Court has in no way previously held, or even suggested it was holding, that Travelers acted timely.

*10 (N.D. Ill. Jan. 26, 2011) (collecting cases). As to those in-between time frames, a few Illinois courts have found delays of six or seven months to be reasonable. *See Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 965 (Ill. App. Ct. 2001) (finding a six-month delay reasonable); *Sears, Roebuck & Co. v. Seneca Ins. Co.*, 627 N.E.2d 173, 174, 178 (Ill. App. Ct. 1993) (finding seven-month delay reasonable).

Even accounting for those Illinois courts that have refused to apply estoppel in cases involving similar time frames, this Court agrees with Collins that the undisputed facts here establish that Travelers did not act within a reasonable time. Again, the determination of whether an insurer acted within a reasonable time depends on the particular facts of the case. Critically, the seven-month period that elapsed between the time Collins tendered the CTA Action's complaint and when it initiated this declaratory judgment suit must be understood against the backdrop that Travelers had multiple years of notice of a potential claim arising from the MWRD embankment collapse. While Travelers asserts, without evidence, that Collins "waited years" to notify it of the embankment collapse, Collins has submitted evidence that Travelers was first informed of the accident on May 19, 2015, a mere four days after it occurred in May 2015. (Suppl. Cecchi Decl. ¶ 2.) Collins also has submitted evidence that Travelers responded in acknowledgment of the potential claim shortly after, on May 22, 2015. (Suppl. Cecchi Decl. ¶¶ 3–4; Suppl. Cecchi Decl., Ex. B.) Further, Collins has submitted a letter that Travelers sent to Collins on March 18, 2016, in which Travelers recognized the possibility of a claim against Collins arising from the embankment collapse and indicated that if any claim were filed against Collins based on the collapse, it would likely not be covered under the professional services exclusion. (Suppl. Cecchi Decl. ¶ 5; Suppl. Cecchi Decl., Ex. C.)

That Travelers knew about a potential claim since May 2015, and was already previewing in March 2016 that it might deny coverage under the professional services endorsement, undermines its suggestions that it was reasonable to take an additional seven months to investigate and prepare its coverage position after Collins requested a defense in July 2018. Indeed, Travelers responded to Collins with a denial letter on August 17, 2018, just one month after receiving the tender from Collins, citing the same provision to which it had pointed over two years earlier in its March 2016 letter. (DRPSF ¶ 49; Cecchi Decl, Ex. E at 3.) This suggests that Travelers was in fact fully aware and prepared to take a coverage position. Yet it delayed for a further six months without defending Collins under a reservation of rights or filing a declaratory judgment action, forcing Collins to defend itself in the CTA Action and initiate a declaratory judgment action on its own. Travelers failed to take these actions despite its own explicit acknowledgment in its August 2018 denial letter that, "[u]nder Illinois law, if Travelers disclaims a duty to defend Collins, it must also file a declaratory judgment action against Collins in order to preserve its right to rely on all of the terms of its Policy." (Cecchi Decl, Ex. E at 3.) Given that Travelers had been aware of the MWRD embankment collapse and a potential claim nearly three years before the CTA Action was filed, and indicated it would likely deny coverage under the professional services exclusion more than two years before it ultimately denied coverage under that provision, the Court finds as a matter of law that Travelers unreasonably delayed for seven months after Collins tendered the CTA Action for defense.[11]

---

[11] To the extent Travelers points to cases where delays of even longer than seven months were found reasonable, the Court finds those cases distinguishable. In *Northern Insurance Co. of New York v. City of Chicago*, for example, the court did not apply estoppel where the insurer delayed for 10 months in filing a declaratory judgment action after it received a request for a defense. 759 N.E.2d 144, 152 (Ill. App. Ct. 2001). But in that case, there was a dispute over whether the insurer had even issued a policy covering the insured; and after the insurer denied coverage, the potential insured never followed up for coverage until filing a declaratory judgment action several months later. *Id.* Again, this Court must determine whether

The Court pauses here to note that the evidence discussed above, with respect to Travelers's notice of the embankment collapse in May 2015 and Travelers's letter to Collins about the claim in March 2016, was submitted for the first time with Collins's reply, as attachments to a second declaration by Collins's president Daniel Cecchi. As previously discussed, when this Court denied Travelers's motion to file a sur-reply responding to this additional evidence it nonetheless stated that, in evaluating the present motion for summary judgment, it would determine whether that evidence was improperly submitted for the first time in reply. (Mar. 29, 2022 Order at 4.) "A movant may offer additional affidavits in reply if it is to, for example, rectify an evidentiary deficiency with respect to previously proffered evidence or provide further foundational support for the movant's statement of material facts." *Felski v. Bretl*, No. 16-CV-1062, 2018 WL 4689119, at *9 (E.D. Wis. Sept. 27, 2018). A reply affidavit therefore may be properly considered where it "merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment." *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 n.1 (7th Cir. 1996) (internal quotation marks omitted).

Travelers claims in its response that it should not be estopped from asserting coverage defenses in part because of its assertion, without any evidence, that Collins waited "years" to notify Travelers of the MWRD embankment collapse. (Def.'s Opp'n at 8–9.) Further, Travelers's argues that it acted reasonably because it needed the time after Collins tendered the CTA Action to investigate and prepare its coverage position. The evidence Collins has submitted in its reply is a direct response to these claims by Travelers. The evidence therefore does not "spring" on

---

Travelers acted reasonably based on the circumstances here, and it does not find that the cases cited to by Travelers compel a different conclusion.

Travelers a new basis for summary judgment, but rather provides further evidence to support Collins's claim that Travelers acted unreasonably and to rebut directly facts put at issue by Travelers in its response. Accordingly, the Court may properly consider, and has considered, the materials in resolving the instant motion.

Finally, the Court is not persuaded by Travelers's argument that its communications with Collins after it requested a defense demonstrate that Travelers "took reasonable steps to adjudicate the issue of coverage." (*Id.* at 10.) Travelers states that, far from "wholly ignore[ing]" Collins, it prepared its detailed coverage position letter, which it sent in August 2018, and that its letter "invited" Collins to withdraw its tender of the CTA complaint for a defense. (*Id.*) After Collins refused to withdraw its tender, Travelers states that it followed up with Collins in November 2018, to see if Collins would enter into a tolling agreement to avoid the cost of coverage litigation.[12] Travelers appears to contend that these actions demonstrate that it acted in a reasonable time and manner because it was not sitting idly by for seven months but was instead in communication with Collins through at least November 2018 trying to resolve its claim.

As Travelers itself recognizes, however, after Collins requested a defense and Travelers determined it would not provide one, it was required either to defend under a reservation of rights or to file suit seeking a declaration of non-coverage. Travelers did neither of those things, and instead let seven months pass before Collins filed its own declaratory judgment action. Travelers's self-serving requests that Collins withdraw its tender for coverage or agree to a tolling agreement do not demonstrate a reasonable attempt to "adjudicate coverage" but rather

---

[12] Even if Travelers's contention about its November 2018 follow-up affected the Court's analysis, it would not be properly before the Court since it is not adequately substantiated. Specifically, the sole evidence of that communication comes from the now stricken declaration of Lee Stephenson. (*See* PRDSAF ¶ 35; *see also* Mar. 29, 2022 Order at 3–4.)

highlight that Travelers had no intent to offer Collins a defense and instead sought to avoid the cost of doing what it knew it was required to do under Illinois law—initiate a declaratory judgment action. And, as this Court held, Travelers did have a duty to defend the CTA Action. Travelers therefore should not be credited as having acted reasonably by asking Collins to withdraw what was a valid claim for a defense.

To allow Travelers to avoid estoppel in the circumstances here would be to undermine the purpose of the estoppel doctrine, which is to give force to an insurer's duty to defend. Indeed, estoppel exists out of recognition that "an insurer's duty to defend under a liability insurance policy is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract." *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1135 (Ill. 1999). In light of the fundamental nature of the promise of a defense, Illinois courts have repeatedly observed that an insurer who refuses to defend an insurer under a reservation of rights or who fails to seek a declaratory judgment, does so "at its own peril." *Eclipse Mfg. Co. v. U.S. Compliance Co.*, 886 N.E.2d 349, 356 (Ill. App. Ct. 2007) (internal quotation marks omitted). Travelers was well aware of this peril in denying a duty to defend, yet it refused to provide Collins a defense or timely seek a declaratory judgment. That refusal was clearly wrongful given the Court's determination that Travelers did have a duty to defend the CTA Action, and the Court holds that Travelers's seven-month delay was unreasonable as a matter of law. The Court therefore concludes that Travelers is estopped from asserting any coverage defenses under the Policy and must indemnify Collins for the settlement of the CTA Action.

## CONCLUSION

For the foregoing reasons, Collins's motion for partial summary judgment (Dkt. No. 106) is granted. The Court finds that find that Travelers must defend Collins in the Walsh Action and indemnify Collins for the CTA Settlement.

ENTERED:

Dated:  September 28, 2024

_____
Andrea R. Wood
United States District Judge